# CHARLESTON.

1873.
January
Term.

## VANBIBBER *vs.* BEIRNE, ET ALS.

MATHIAS VANBIBBER, PLAINTIFF AND APPELLEE, *against* JOHN MCANEANY, & CO., BEIRNE, DUFFY, & CO., AND PATRICK BEIRNE, DEFENDANTS, AND SAID PATRICK BEIRNE, APPELLANT.

Decided February 22nd, 1873.

1. Every estoppel, because it concludeth a man to allege the truth, must be certain to every intent, and not to be taken by argument or inference.

2. Where actual fraud is relied on, to authorize a recovery, the fraud should be clearly proven.

3. Every averment necessary to entitle a plaintiff to be entertained in a Court of equity must be contained in the bill.

4. The 35th section of chapter 125 of the Code of this State provides for the filing of a special replication, in a suit in equity, where the defendant in his answer alleges new matter, constituting a claim for affirmative relief: But this provision in this respect applies only when the answer sets up new matter, for which a cross bill might be filed, and does not change the general practice as to pleading in equity in other cases.

5. If it appear by the proper pleadings supported by proof that the facts on which the cause of action is founded were exclusively in the knowledge of the defendant; that he fraudulently concealed

those facts; and that by such ways and means he defeated and obstructed the plaintiff from bringing his action within the time limited, the statute of limitations is answered.

6. To an answer setting up the statute of limitations, the plaintiff files his replication alleging that he did bring and prosecute his suit in this behalf, within five years from the time of the defendant's liability to be sued, and notice to the plaintiff of the matter complained of in the bill. This replication will not avoid the statute of limitations.

On the 6th day of December, 1869, the Plaintiff exhibited his bill in the Circuit Court of Nicholas county against the Defendants, in which he alleged, that he loaned the late firm of John McAneany & Co., $100.00 on the 1st day of February, 1859, $250.00 on the 25th day of the same month, and $300.00 on the 24th day of May, 1860, for which he took the three several notes of said firm; that on the 13th day of March, 1868, he brought suit on said notes against John McAneany, Philip Duffy, and Andrew Beirne, the partners of said firm, in the Circuit Court of Kanawha county; that at the June term, 1868, he recovered judgment thereon; that upon said judgment execution was issued and returned *nulla bona;* and that all the partners of said firm are insolvent and bankrupt. The bill then proceeds, " Before your orator thought of making these loans, although they had been urgently pressed upon him by said firm of John McAneany & Co., he was assured by Patrick Beirne, the father of said Andrew, that he had given his said son Andrew his entire interest in the firm of Beirne, Duffy & Co., in Nicholas county, and that the loan would be perfectly safe. This assurance was given with a view to induce said loans. Your orator knew the firm of Beirne, Duffy & Co., in Nicholas, to be a wealthy, strong firm, and that the interest of said Patrick Beirne therein was worth a large sum, at least, as he supposed and yet supposes, $50,000,00. He, there-

22

1873.
January
Term.

Vanbibber,
v.
Beirne et als.

fore, made the loans with full confidence in the ability of the said firm to repay him the said moneys; he, however, would not have made the loans without this direct assurance from said Patrick Beirne.   He now charges that said Patrick Beirne, either had not and has not given to his said son, Andrew, his interest in said firm of Beirne, Duffy & Co., which is the great reason, if not the entire reason, of the insolvency of the firm of John McAneany & Co., or that it was afterwards fraudulently cancelled with a view of defeating creditors, and he charges that the said Patrick Beirne ought to be and will be held liable to your orator for the loans aforesaid, at least to the extent of the interest of said Patrick Beirne in the effects of Beirne, Duffy & Co., which he believes to be ample, but which can be certainly ascertained by an account to be taken between the partners under a decree of this Court.   The said firm of Beirne, Duffy & Co., was composed of Patrick Beirne, John Duffy and Philip Duffy.   Your orator insists upon it that a Court of Equity will not permit the said Patrick Beirne to withhold his interest in the effects of said firm from your orator after the positive assurance given him that he had given the same to his said son."   The bill then prays, that so much of the interest of Patrick Beirne in the said firm of Beirne, Duffy & Co., as may be sufficient, may be applied to the payment of the Plaintiff's said debt; and for general relief.

At the May term, 1870, Patrick Beirne filed his answer to said bill, in which he positively denies that he ever told the Plaintiff that he had given to his son, Andrew, his interest in the firm of Beirne, Duffy & Co., or that he at any time ever made any statement to the Plaintiff with a view to induce him to loan money to said firm of John McAneany & Co., or that in fact he ever gave said interest to his said son.   He avers that the cause of action set up by the Plaintiff in his bill (if it ever existed, which he positively denies,) accrued

more than five years before the institution of this suit, and he pleads the statute of limitations in bar thereof. At the November term, 1870, the Plaintiff replied to said answer as follows: " And for special replication to the answer of Patrick Beirne, the Plaintiff saith that he did bring his suit in this behalf within five years from the time of said Defendant's liability to be sued, and notice to the Plaintiff that said Defendant, P. Beirne, had not transferred his interest in the firm of Beirne, Duffy & Co., in Nicholas county, to the Defendant, Andrew Beirne ; and the other statements in said answer are denied." To this replication Patrick Beirne demurred.

Andrew Beirne also filed his answer setting up various payments upon the claim of the Plaintiff, and pleaded his discharge in bankruptcy. To this answer the Plaintiff filed both a general and special replication. None of the other Defendants answered and the bill was taken for confessed as to them.

The cause was referred to a commissioner to ascertain the amount of the Plaintiff's debt still due, and a number of depositions were taken on behalf of both the Plaintiff and the Defendant, Patrick Beirne. The substance and character of these depositions are sufficiently set forth in the opinion of the Court. And on the 9th day of November, 1871, the Court pronounced a personal decree against the Defendant, Patrick Beirne, for $759.98, with interest thereon from the 1st day of July, 1871, and the costs of the suit. From this decree Patrick Beirne appealed to this Court.

*Snyder* for Appellant.

The Plaintiff avers that before he made the said loans, " he was assured by Patrick Beirne " that he " had given his son, Andrew, his entire interest in the firm of Beirne,

Duffy & Co., in Nicholas county, and that the loan would be perfectly safe." He also avers that he " would not have made the loans without this direct assurance from said P. Beirne." These are the only averments in the bill that tend to fix any liability upon Patrick Beirne, who is the Appellant in this Court; for the statement that " this assurance was given with a view to induce said loans," is simply a conclusion without any facts stated to warrant it, and, therefore, must be disregarded.—Wright *vs.* Dame, 22 Pick. 55. The bill contains no charge of fraud, nor does it set out sufficient facts to constitute fraud, or estop the Appellant.—Herman on Estop. §331; and Debzelt *vs.* Odell, 3 Hill, 219; 6 Johns. 543.

In order to charge the Appellant, P. Beirne, there should be an averment that the Plaintiff stated his object for applying to him for information as to the solvency of his son, Andrew; he should have' notified him that he was about to contract with Andrew, and that he wished to know whether or not he had given him his interest in the firm of Beirne, Duffy & Co., for that reason, otherwise Beirne might very naturally have regarded such an enquiry as impertinent, and not entitled to a serious reply.—Herman on Estop., §335; Eyre *vs.* Dunsford, 1 East, 318; Lang *vs.* Lee, 3 Rand. 410; Lord *vs.* Goddard, 13 How. 198; Russel *vs.* Clark, 7 Cranch 69. But are the allegations of the bill, in this case, sufficient to charge the Appellant? In general, the allegation of fraud is necessary.—Gouveneur *vs.* Elmendorf, 5 Johns. Chy. 79; Thompson *vs.* Jackson, 3 Rand. 504; Booth *vs.* Booth, 3 Litt. 57. Though, where the facts are stated with *distinctness* and *precision*, an allegation of fraud, *totidem verbis*, is not required.—McCalmont *vs.* Rankin, 8 Hare, 1; Skine *vs.* Simmons, 11 Geo. 401.— The averments being insufficient, the bill should have been dismissed at the hearing for want of equity, although not demurred to.—Lockard *vs.* Lockard, 16 Ala.,

423; Hudson *vs.* Kline, 9 Grat. 379; Green *vs.* Massie, 21 Grat. 356.

But suppose everything is true that is stated by the Plaintiff, still the case must be reversed. If the Appellant induced the Plaintiff to loan his money, by assuring him that he had given his interest in the firm of Beirne, Duffy & Co., in Nicholas, to his son, Andrew, and he loaned it on this assurance, the Court certainly can do no more than to compel the Appellant to make good this assurance and estop him from setting up a claim to said interest, to the prejudice of the Plaintiff.—Herman on Estop, §§252 and 324. If the Plaintiff loaned his money, as he says, "with full confidence in the ability of said firm to repay him," he should be satisfied when he has exhausted this fund upon which he relied with so much confidence, and not be permitted to resort to the whole estate of the Appellant. He does not pretend that he was misled as to any other fact; but, on the contrary, he avers, in his bill, that he "knew" said firm "to be a wealthy, strong firm, and that the interest of said Patrick Beirne therein was worth a large sum—at least, as he supposed, and yet supposes, $50,000." Then, upon what principle of law, equity, or justice, did the Court give a *personal* decree against the Appellant? Even the Plaintiff's bill is too modest to make such an inconsistent demand. If, on the other hand, the Court was of opinion that this was not an action to subject the interest of the Appellant in said firm of Beirne, Duffy & Co., to the Plaintiff's debt, but a personal action against him, then it must have regarded it as an action for damages for deceit, and the bill should have been dismissed for the want of jurisdiction in this Court.—Insurance Co., *vs.* Bailey, 13 Wallace, 616, 621. And the Statute of Frauds bars such an action at law.—Code 1860, Ch. 143, p. 627.

The cause of action in this case, if any there was against the Appellant, accrued in the year 1858, at the time the alleged representation was made. This was

more than five years before the institution of this suit, and the Appellant pleaded the Statute of Limitations. This was a complete bar to the Plaintiff's demand. White *vs.* Rice, 4 Leigh, 474. While it is true that fraud is not barred by time, where it remains unknown, yet it is equally true that the Courts will always presume it was known; and, unless the Plaintiff puts this fact in issue by his bill, he will be barred. Either in the Courts of law or equity, where the Defendant, by his plea or answer, sets up a defence which can only be avoided by new matter, such matter must appear by the pleadings. At law, the Plaintiff must set up the new matter by special replication.—Rice *vs.* White. 4 Leigh, 474. And, in equity, the Plaintiff must obtain leave to amend his bill, and suit it to the defence, or he may file a supplemental bill. Special replications are now disused in equity, and the cause will be determined upon the bill and answer, without considering any new fact set up by way of special replication.—Mitf. Pl. by Jeremy, 321, 322; Story's Eq. Pl. §878; James *vs.* McKernon, 6 Johns. R. 564; White *vs.* Morrison, 11 Ill. 361; Duponti *vs.* Mussy, 4 Wash. C. C., 128; 2 Rob. Pr. (old,) 315.—More especially do these authorities sustain the Appellant in this case, as he demurred to said special replication.

It is deemed unnecessary to notice, separately, the voluminous depositions taken and foisted in the Record by the Plaintiff. Not one of them even tends to prove that the Appellant ever saw the Plaintiff, much less that he gave him the assurance asserted by the Plaintiff. They all relate to common rumor, admissions of the other Defendants, and the transactions of the Appellant with persons not parties to this bill, and have no possible bearing upon the issues in this suit.—Herman on Estop, §§332 and 335. They do not even remotely support the pretensions of the Plaintiff, but rather discredit his claim. For from them the Court may gather what suggested, in

all probability, this suit. It appears, from these depositions, that the Appellant started his son, Andrew, in the mercantile business in Nicholas County; that he allowed his son to collect some the debts due the firm of Beirne, Duffy & Co.; that he was regarded by the people of that County as a man of wealth, and it was the common rumor that he had given his interest in said firm of Beirne, Duffy & Co., to his son, and that he stated his intention of so doing to some of the witnesses. Knowing these rumors and impressions existed, the Plaintiff, when he found John McAneany & Co., insolvent, for he never even sued them until they, or a part of them, had become bankrupts, seized upon the happy, but delusive, idea that he could make Patrick Beirne responsible for his debt, upon the evidence of common rumor, general impressions, and his own well considered testimony. But the whole affair is absurd.

*Price* for Appellee.

HAYMOND, PRESIDENT.

There seems to be some contradiction and confusion in the authorities, as to whether a Court of Equity has jurisdiction where fraudulent misrepresentation is made which causes damage. It is said by Lord Eldon in Evans *vs.* Bicknell, 6 Ves., 174, to be a very old head of equity, that if a representation is made by one person to another going to deal in a matter of interest upon the faith of that representation, the former shall make that representation good, if he knew it to be false. The case of Pasley *vs.* Freeman, 3 T., R., 151, he thought, might have been maintained in equity, upon the principles of many decisions of that Court. About this doctrine Chancellor Kent said there can be no dispute. Bacon *vs.* Bronson, 7 Johns., Ch., R., 201. Yet it has been seriously questioned in the Supreme Court of the United States; and the opinion of that Court appears to be against the jurisdiction of equity in such case. Russell

*vs.* Clark's ex'ors, &c., 7 Cranch, 69. See Robinson's old Practice, 2d vol., 30. In the case of Lang *vs.* Lee, et als, 3d Rand., 410, it was held, that, "where one man recommends another to a third, as being worthy of trust, by which the person recommended obtains a credit, the party recommending shall be answerable for any loss the other may sustain, in consequence of the credit, if he knew at the time, that the man for whom he vouched was not trustworthy." This was a suit in chancery, but the suit was not brought or prosecuted to make the party liable, who practised the fraud. The suit was in fact brought by the party who had practised the fraud setting up a deed of trust, and claiming the benefit thereof, against parties for whose benefit another deed of trust had been executed; and the question now under consideration was considered by only two of the Judges, and it was not necessary to decide that equity would have jurisdiction in such a case, and I do not understand them so to decide. In the case of Poore *vs.* Price, 5th Leigh, page 52, (which was a case founded upon fraudulent misrepresentation, and damage,) it was held that a Court of Equity had jurisdiction, but in that case the plaintiff was induced by the fraudulent misrepresentation of the defendant to release a mortgage to defendant, a purchaser of the mortgaged subject; and the bill, among other things, prayed that the plaintiff be re-instated to the benefit of his mortgage lien. Under the peculiar circumstances of this case the plaintiff had not a complete remedy at law, and it was clearly proper for equity to entertain the bill to re-instate the mortgage lien. In the case of Russell *vs.* Clark's ex'ors in 7th Cranch, page 89, Judge Marshall says, " on the question of fraud the remedy at law is also complete, and no case is recollected where a Court of Equity has afforded relief for an injury sustained by the fraud of a person who is no party to a contract, induced by that fraud. It is true that if certain facts, essential to the merits of a claim, purely le-

gal, be exclusively within the knowledge of the party against whom that claim is asserted, he may be required, in a Court of Chancery, to disclose these facts, and the Court, being thus rightly in possession of the cause, will proceed to determine the whole matter in controversy. But this rule cannot be abused, by being employed as a mere pretext for bringing causes into a Court of Equity proper for a Court of law."

" The most general description of a Court of Equity is, that it has jurisdiction in cases where a plain, adequate, and complete remedy cannot be had at law." Robinson's old Practice, 2 Vol., page 1.

It seems to me doubtful whether the Plaintiff has the right to be entertained in equity upon his case as stated in his bill, upon the supposition that the case made by the bill amounts to a fraudulent misrepresentation causing damage. It seems clear that in such case the party injured has his remedy at law, and that the remedy is plain and complete. " Fraud without damage, or damage without fraud, gives no cause of action, but where these two do concur, there, an action lieth."—Per Croke J., 3 Bulstr., 95.

But if it be admitted that equity has jurisdiction of causes of action founded in deceit, and fraudulent misrepresentation whereby damage is incurred, still, I think Plaintiff's bill fails in its allegations to make a case for the exercise of that jurisdiction. It fails to allege, that at the time of the assurance by Patrick Beirne, "the loan to John McAneany & Co., was not perfectly safe, and that Patrick Beirne at the time of the making the assurance knew that the firm was not safe, and that the assurances of Beirne in the bill stated, were false at the time they were made, and that Beirne knew them to be false." Fraud or fraudulent intent in Beirne in making the assurance, is no where alleged; and the facts are not stated with sufficient distinctness and precision to enable

the Court to determine the true nature and extent of the assurance, and the effect that should be given to it as a fraud or estoppel. The time the assurance was made, and the circumstances under which it was made are not stated. It is true the bill alleges, that in 1868, nine years after the transaction, the firm of John McAneany & Co., and the members thereof were insolvent and bankrupt, but their condition at the time of the assurance or loans is left to conjecture.

"Every estoppel," says Lord Coke, "because it concludeth a man to allege the truth, must be certain to every intent, and not to be taken by argument or inference." (Co., Litt., 352, b.)

Patrick Beirne in his answer denies all the material allegations of the bill, and pleads that the cause of action (if any ever existed, which he denies) accrued more than five years before the institution of the suit. Andrew Beirne filed his answer averring, that there should be further credits on the debt, &c. The other Defendants failed to answer.

To each of the answers the Plaintiff filed a special replication. The replication to the answer of Patrick Beirne says: "the Plaintiff did bring and prosecute his suit in this behalf within five years from the time of the Defendant's liability to be sued; and notice to the Plaintiff that Defendant P. Beirne had not transferred his interest in the firm of Beirne, Duffy & Co., in Nicholas county, to the Defendant, Andrew Beirne, and the other statements in the answer, are denied. It is claimed by the counsel of P. Beirne that the statute of limitations is well pleaded, and that the replication is not sufficient to prevent the statute from running from the time of the alleged loans, and assurances—that if the replication amounts to anything it is only a general replication, or is immaterial. The case of Rice vs. White, 4 Leigh 474, is cited to support this view. I don't think, under the allegations of the Plaintiff's bill, the replication is

sufficient to prevent the statute of limitations from running against Plaintiff's claim; nor do I think the replication would be sufficient for that purpose in any case. What will prevent the statute of limitations from running against a cause of action? The 18th section, page 550 of Chapter 104 of the Code, in which the statute of limitations applicable to this case is found, provides, that if the person against whom the right of action exists shall obstruct the prosecution of such right by absconding or concealing himself, or by any other indirect ways or means obstruct the prosecution of such right, the time such obstruction may have continued shall not be computed as any part of the time within which the said right might or ought to have been prosecuted. In the case of Callis *vs.* Waddy, 2 Munford, Rep. 511, it was decided that in an action on the case for a deceit, if the Defendant plead that the cause of action did not accrue in five years next before suing out the writ, a replication that the fraud came to the Plaintiff's knowledge within that time is not good. But where Plaintiff replied, that the cause of action was fraudulently concealed by Defendant from Plaintiff until within five years next before action brought, it was good. Such replication held good in Massachusetts, New Hampshire, Pennsylvania and Maine. See 1 Robinson's Old Practice, 85 and 86. I think where it properly appears by the pleadings that the facts on which the cause of action was founded, were exclusively in the knowledge of the Defendant; that he fraudulently concealed these facts; and that by such ways and means he defeated and obstructed the Plaintiff from bringing his action within the time limited, the effect of the statute may be avoided in actions at law as well as in suits in equity.—Rob. Old Prac. 1 vol. 110. I do not mean to be understood as saying that no other averments will avoid the effect of the statute, except such as I have stated. The counsel for the Appellee, relied in argument upon the case of

Rice vs. White already cited. In that case it is said, " It seems that if the fraud was not discovered till some time after it was practised, and within the time of limitation, this would suffice to take the case out of the statute; but to enable the Plaintiff to avail himself of such matter, he must plead it specially in his replication." This was an action at law. It was held in this case that the statute commenced running from the time the deceit was practised. It is not clear that a special replication to an answer setting up the statute of limitations is proper at this day in suits in equity. Some of the most approved authors upon Equity Pleadings maintain that special replications to answers have gone into disuse, and are not now recognized. Cooper, in his work on Equity Pleading, pages 329 and 330, says, " Formerly replications were either general or special, as they still are at law. A general replication, which alone is now used in equity, is a general denial of the truth of the Defendant's plea or answer, and of the sufficiency of the matter alleged in it, to bar the Plaintiff's suit, and an assertion of the truth and sufficiency of the bill. A special replication was occasioned by the Defendant's introducing new matter into his plea or answer, which made it necessary for the Plaintiff to put in issue some additional fact on his part, in avoidance of such new matter introduced by the Defendant. These it seems were in use in Lord Nottingham's time. The consequence of a special replication was a rejoinder, by which the Defendant asserted the truth and sufficiency of his answer, and traversed every material part of the replication; and if the parties were not then at issue, by reason of some new matter disclosed in the rejoinder, which required answer, the Plaintiff might file a sur-rejoinder, to which the Defendant in his turn might put in a rebutter; and pleadings in ancient times in this manner frequently proceeded to a sur-rejoinder, and re-butter. But the inconvenience, expense, and delay of

1878.
January
Term.

Vanbibber,
v. ;
Beirne et als.

these proceedings, occasioned an alteration of the practice. Special replications have gone quite out of use, so that if any material charge is omitted in the bill, although it is alleged by way of replication, it is not pertinent, nor shall it affect the Defendant. In the room of special replications, amendments of the bill have been substituted, and the Plaintiff must now be always relieved according to the form and matter, either originally or by amendment, contained in his bill. To the matter thus introduced by the Plaintiff, the Defendant puts in a further answer, whether required by the Plaintiff to do so or not, and thus he has the advantage and effect of a special rejoinder." Mitford, in his Pleadings, on pages 321 and 322 asserts the same practice, and Story in his Equity Pleadings, section 848, does likewise. See also 2nd Vol. of Robinson's old practice, page 315, under the head of "Replication to answer." See also the opinions of Judges Spencer and Kent, in the case of William James against John M. Kenan, adm'r., &c., in 6th Johnson's Reports, by William Johnson, commencing on side page 543. It is true that the 35th section of Chapter 125 of the present Code of laws of this State, provides for the filing of a special replication in a suit in equity, where the Defendant, in his answer, alleges new matter constituting a claim for affimative relief. This only applies where the answer sets up new matter of affirmative relief for which a cross bill might be filed, and does not affect the general rule in other cases. If the Plaintiff, on the filing of P. Beirne's answer had obtained leave to amend his bill, and filed an amended bill, alleging the fraud, &c., as already indicated, if the facts would permit; and containing such averments as would avoid the effect of the statute, he might have succeeded in this cause if the proof was sufficient. While I do not say that a special replication to an answer will be allowed in no case except that provided for in the Code, still I think as a general rule the practice in equity as

stated by the authors cited above is the better practice.

The decree rendered, from which the appeal is taken, is a personal decree against Patrick Beirne, and does not pursue his interest in the effects of Beirne, Duffy & Co., in Nicholas county. The decree is, therefore, not in accordance with the claim and special prayer of the bill, but is evidently predicated upon a supposed fraud of the character of those cited in 3 Randolph, and in the case of Lang vs. Lee et als, and also in 6 Vesey, jr.. 182, and is made under the prayer for general relief. But those cases are not similar to the case made by the Plaintiff's bill. If it be conceded that the bill and other pleadings are sufficient, and the statute of limitations be disregarded, still I think the decree appealed from is erroneous upon the merits of the case. The Plaintiff's case, as to the material fact of the representation or assurance of P. Beirne alleged in the bill, is supported by his evidence alone. He says, in his deposition of 3d of May, 1870, that the conversation in which the misrepresentation or assurance was made, occurred in the Fall of 1858, at the store of McAneany & Co., and it fully appears that the store of McAneany & Co. was in the county of Nicholas. It appears that the two sums first loaned were loaned in February, 1859, and the last in May, 1860. Patrick Beirne, in his evidence, contradicts the evidence of Plaintiff throughout. He declares he was not in the county of Nicholas in the year 1858; that he did not know Plaintiff and never had with Plaintiff the conversation to which he testifies; says positively that he was in the county of Nicholas in the year 1857, and but twice thereafter between that time and 1867, and then only for a short time on a visit, to-wit, once in October, 1859, and again in the month of September, 1860. Andrew Beirne contradicts the testimony given by Plaintiff in several material particulars, and corroborates that of P. Beirne. John McAneany testifies that he borrowed the money from Plaintiff for the firm of

1873.
January
Term.

Vanbibber,
v.
Beirne et als.

John McAneany & Co.; that it was loaned under the advice of Robert Dunlap, the counsel of Plaintiff; that Patrick Beirne was not present, nor did he come to Nicholas, where the money was loaned, for some time thereafter; that Patrick Beirne knew nothing about it. Plaintiff testifies that McAneany, after he (Plaintiff) had refused to loan the money two or three times to him and Andrew Beirne, called him to the store, where Patrick Beirne introduced the subject again, and requested him to loan the money to the firm of McAneany & Co., and said they were perfectly good, &c. This, the testimony of McAneany substantially contradicts. McAneany produces a receipt of Plaintiff for $150, the price of a horse, which contradicts the testimony given by Plaintiff as to said $150, and where it was to be credited. While the material fact in issue is testified to alone by Plaintiff, it is contradicted by Patrick Beirne, who is corroborated to a great extent by McAneany and Andrew Beirne. True, the Plaintiff has taken the depositions of several witnesses, but they fail to testify as to the material fact in the case, to-wit, the assurance, &c., alleged to have been made to Plaintiff. They are introduced chiefly to contradict Patrick Beirne as to declarations made to them at different times, when Plaintiff was not present. None of these depositions, however, prove that Patrick Beirne made to Plaintiff the assurance alleged in the bill, which is the material fact in issue, or that Patrick Beirne ever had any conversation with Plaintiff, or in his presence, on any subject. The weight of evidence as to the material facts alleged by the Plaintiff is against him, and against his alleged cause of action against Patrick Beirne. Where actual fraud is relied on as a ground of recovery, it should be clearly proved.

For these reasons the decree of the Circuit Court of Nicholas county, rendered in this cause on the 9th day of November, 1871, must be reversed, with costs to the Appellant in this Court; and this Court proceeding to

1873.
January
Term.

Vanbibber,
v.
Beirne et als.

render such decree as said Circuit Court ought to have rendered, the Plaintiff's bill must be dismissed, and he pay the Defendant, Patrick Beirne, his costs incurred about his defence of this cause in said Circuit Court.

PAULL and MOORE, Judges, concur in the foregoing opinion.