# Wheeling,

LORENTZ *v.* LORENTZ, EX'R, *et al.*

Decided April 26, 1879.

1879
Special Term.

1. When a father purchases a tract of land in the name of a son, and in the written contract the vendor is required upon the payment of the purchase money to convey the land to the son, and the father pays the purchase money, the son can in a court of equity compel the vendor to convey the land to him, there being in such case, no resulting trust to the father.

2. Every estoppel, because it concludeth a man to allege the truth, must be certain to every intent, and not to be taken by argument or inference.

Appeal from, and supersedeas to a decree of the circuit court of Braxton county, rendered on the 24th day of August, 1876, in a cause in said court then pending, wherein Perry C. Lorentz was plaintiff, and Mifflin Lorentz and others were defendants, granted on the petition of said plaintiff.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decree appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case :

At rules in the clerk's office of the circuit court of Upshur county, in October, 1870, Perry C. Lorentz, filed his bill against Mifflin Lorentz, executor of the last will of Jacob Lorentz, deceased, and Mifflin Lorentz

and others, heirs-at-law of said Jacob, and D. D. Whetzel to compel a specific performance of a contract for the purchase of seventy-four acres of land.

The bill is substantially as follows:

That on the 14th day of July, 1838, Jacob Lorentz, now deceased, sold to David D. Whetzel at the price of $187.50, a tract of seventy-four acres of land on Stone Coal creek in the county of Lewis. At the time of said sale said Jacob Lorentz made, signed and delivered to said Whetzel a writing commonly call a title-bond, reciting such sale of land, giving a description thereof, reciting the terms of such sale and binding said Lorentz to execute to said Whetzel a deed for said land with covenant of general warranty, when the purchase-money should be paid. Afterwards, on the —— day of ——, 18—, said David D. Whetzel sold said land to the plaintiff for a valuable consideration, and assigned and transferred to the plaintiff all his right, title and interest in said tract of land by an endorsement in writing on said bond, to which writing he subscribed his name.

The said David D. Whetzel paid to said Jacob Lorentz in his lifetime all the purchase-money due from said Whetzel to said Jacob on said tract of land, and the plaintiff has long since paid to said Whetzel all the purchase-money therefor which he was to pay, and therefore under said title-bond and assignment the plaintiff was entitled to a deed for said land.

At the suggestion of said Jacob Lorentz, and to afford him a guide in drawing a deed for said land, the said title-bond was deposited in the hands of the said Jacob, who being the father of the plaintiff, and the plaintiff reposing unbounded confidence in him, the execution of said deed was procrastinated by said Jacob, and never executed by him. The said Jacob died in 1866; and the said title-bond after his decease was among his papers, and is now in the hands of Mifflin Lorentz his executor. Said Jacob in his lifetime always admitted the right of

the plaintiff to a deed; and the execution thereof was merely suffered to rest out of the confidence and trust existing between father and son. When said Jacob Lorentz sold said land to Whetzel, he placed Whetzel in possession thereof; and when said Whetzel sold the said land to plaintiff, he placed the plaintiff in possession thereof; and he still occupies the same.

The prayer of the bill is, that said Mifflin Lorentz file in this cause the said title-bond, and that a specific execution thereof be decreed to the plaintiff.

On the 24th day of March, 1874, Mifflin Lorentz, as executor of his father's will, and as one of his heirs-at-law, filed his answer to the bill.

The answer admits the sale of the land by his father to Whetzel, and the execution by him of the title-bond. Said title-bond, as is described in the bill is filed with the answer. Respondent also admits, that "under same contract of purchase said Whetzel assigned said title-bond to Perry Lorentz on the 31st day of March, 1842, but respondent *utterly denies* that said Perry Lorentz ever paid one dollar of the purchase-money on said land to said Whetzel." "By reference to said title-bond an endorsement will be found thereon in the hand-writing of said Jacob Lorentz, 'Perry paid nothing.' But respondent here charges that at the time of the assignment of said title-bond by said Whetzel to said Perry, Jacob Lorentz, paid the said Whetzel the whole amount of purchase-money that said Perry had agreed to pay said Whetzel for said land." "Respondent further charges that at the same time, to-wit, on the 31st day of March, 1842, said Perry Lorentz assigned and transferred to said Jocob Lorentz said title-bond, by surrendering and delivering up to said Jacob Lorentz said title-bond which remained ever since in the possession of said Jacob Lorentz, and his personal representative." "That at various times during the last thirty years said Perry Lorentz has repeatedly disclaimed having any title to said land."

That after Perry Lorentz had delivered said bond to said Jacob Lorentz, Jacob Lorentz conveyed as a gift to his said son Perry, eight hundred and twenty-three acres of land worth $5,372.50, which sum, together with other advancements made by said Jacob to his son Perry, amounts to the large sum of $8,482.46, as will appear by reference to the last will and testament of Jacob Lorentz, which is made an exhibit with the plaintiff's bill, and which will appear charged against said Perry Lorentz upon the ledger of his father, Jacob Lorentz, which is a larger sum than most of the other sons of said Jacob can ever receive from their father's estate.

Respondent further says, that on the 30th day of June, 1862, said Jacob Lorentz, upon the consideration of natural love and affection, executed a deed of trust to Jacob Lorentz, Jr., trustee, conveying in trust for the term of ten years four hundred and four acres of land embracing the said seventy-four acres mentioned in in plaintiffs' bill, for use and benefit of said Perry Lorentz's wife and children. Said Perry accepted the benefit of said trust and has held it ever since. A copy thereof is exhibited with the answer. That respondent, as executor of the last will of his father, has in his possession two papers containing lists of unsold land of said Jacob Lorentz, both written in his own handwriting, one dated July, 1864, and the other June, 1865 ; and both of said lists embrace the said seventy-four acres. Said two lists are filed as exhibits with the answer. Respondent prays that the bill be dismissed with costs.

On the 12th day of July, 1875, the cause was removed to the circuit court of Braxton county, on the ground that the judge of the circuit court of Upshur county was so situated that it was improper for him to try the cause.

The deed of trust referred to in the answer of Mifflin Lorentz was for "the exclusive use and benefit of the said Catharine Lorentz and her chidren that she now has or may hereafter have by her said husband, Perry Lorentz, free from the control of the said Perry Lorentz,

her husband, and not liable for his debts now existing or hereafter to be contracted," &c. It contains the said seventy-four acres in the bill mentioned.

The depositions of the plaintiff showed substantially as follows:

John Kee knew Perry has been in possession of the land eighteen or twenty years; understood he purchased the land from David D. Whetzel; had a conversation with Jacob Lorentz about the land, in which he told witness that Perry Lorentz came up to his house and wanted him to make him a deed for the land, and he told him that he would not do it. The reason he would not make the deed was, that he intended to keep the land for the wife and children of Perry Lorentz for a "wet day." He said the title was in him, Jacob Lorentz, but that the land was Perry's; that if Perry Lorentz got the land he would fool it away: he thought it would be best to keep it for his wife and children. He asked witness if he did not think he did right to keep it for his wife and children. He did not say how Perry was entitled to the land. Witness thought this conversation occurred before 1860.

On cross-examination witness said he had been commissioner of the revenue, and as such was directed by Perry Lorentz and wife to leave the seventy-four acres of land off the commissioner's-books. They said they were paying taxes on it twice, as it was charged already in the big tract, which big tract was held in trust for the wife and children of Perry Lorentz. The big tract was charged on the commissioner's-books in the name of "Jacob Lorentz, Jr., trustee for Catharine Lorentz and heirs."

Jacob Lorentz, Jr. said Perry Lorentz had been in possession of said land for some twenty years; understood that he claimed possession under David D. Whetzel by purchase. After witness had been appointed trustee for Perry's wife and children, in 1862, he had a conversation with his father, Jacob Lorentz, in which his father told him he was appointed such trustee; he

then told him about the seventy-four acres of land; said witness must have it transferred on the commissioner's books to Perry Lorentz, because it was Perry's land, and he did not want to have to pay tax on it, for it was actually Perry's land; and witness said: "Father, why is this Perry's land?" he answered. "Because Perry's wife paid her own money for it."

On cross-examination: said he accepted the trust, and acted as such trustee. To the question: "Did you since 1865, go to Perry Lorentz's as trustee, to get Perry's wife to sign a writing drawn by Mifflin Lorentz executor of Jacob Lorentz, deceased, releasing the deed of trust and possession to the seventy-four acres of land mentioned?" answered, "I did, I believe, go down there with something of that kind." To the question: "Did she sign it? If not, what was the reason she did not sign it?" answered, "She did not sign it. The reason was this: she said she would not sign it unless Mifflin would pay interest on the money paid for the land, or the interest on the sale of the land, I do not recollect which." Witness said his father gave no reason why he embraced the seventy-four acres in the trust deed. Did not know who paid the taxes on the seventy-four acres; he did not, as trustee.

G. C. Lorentz was the grandson of Jacob Lorentz; says the old gentleman died in 1866; was at the house of Jacob Lorentz about two weeks before he died. Mifflin Lorentz, witness, and his father, Geo W. Lorentz, were all in Jacob Lorentz's room; his grandfather, Jacob Lorentz, asked Mifflin Lorentz, if "he had that matter fixed?" He said nothing more and lay down on the bed. After lying there a short time, he raised up with his head resting on his hand; he then asked Mifflin Lorentz, "if he thought he had all things fixed right, if the papers were all fixed right?" Then witness's father, Geo. W. Lorentz, said to Mifflin Lorentz, "there seems to be something bearing on his mind," and Mifflin Lorentz said to Geo. W. Lorentz, "he appears to be troubled about

Perry Lorentz's business, about the seventy-four acres of land. Mifflin Lorentz said "I fixed that long ago," and that Perry Lorentz was all right.

David D. Whetzel, purchased the seventy-four acres from Jacob Lorentz, and paid him for it $187.50. He gave witness a title-bond, requiring him to convey the land to witness. Jacob Lorentz placed witness in possesion of the land at the time of the purchase, witness paid all the purchase money to Jacob Lorentz; he never executed a deed for said land to witness. Witness sold the land to Perry Lorentz, the plaintiff, and assigned him the said title-bond, and placed him in possession of said land. At the time of the assignment witness "laid the title-bond on the counter at the store of Jacob Lorentz, deceased, and plaintiff made a motion to take it; Jacob Lorentz, deceased, said he would take it and keep it here." Why he kept it witness did not know. Did not say why he desired to keep it.

On cross-examination witness said, at the time he sold the seventy-four acres to Perry, he sold him one hundred and fifty acres more, and made him a deed for the one hundred and fifty acres, at that time he received $500.00 in paper money, thinks "Jacob Lorentz counted it out." Perry Lorentz told witness afterwards to call on Jacob Lorentz for $300.00 in silver, which he, Perry Lorentz, had there for witness, which the said Jacob Lorentz paid him, witness. Thinks it was in the fall of 1840 or 1841 that the $300.00 was paid. Perry Lorentz was not present. In answer to the question : "How much money in all did Jacob Lorentz pay you for Perry Lorentz in his purchase from you?" Said : "I received from him, Jacob Lorentz, eight hundred dollars on said purchase." Witness valued the seventy-four acres at not quite $5.00 per acre. On the day the deed was executed witness received from Perry Lorentz $200.00.

For the defendants, the depositions of Andrew Poundstone, and Mifflin Lorentz were taken and read in the cause.

Andrew Poundstone was acquainted with the parties; knew the seventy-four acre tract of land; recognized Exhibit "B" filed with the answer, being a list of the unsold lands of Jacob Lorentz, deceased, as being in the hand-writing of said Jacob Lorentz; had seen him write many times; since the death of Jacob Lorentz had a conversation with Perry Lorentz about said seventy-four acres of land. Perry wanted to buy the three hundred and thirty-four acres of land on Stone Coal; said he could buy it provided his wife would relinquish a deed of trust executed by Jacob Lorentz, Sr., to Jacob Lorentz, Jr., trustee for her and her children's benefit; went down to Perry Lorentz's at his instance to see his wife to know if she would release her claim under the deed of trust to enable Mifflin Lorentz to sell the seventy-four acres, which she refused to do, unless Mifflin Lorentz would pay her the interest on the money, which he would receive for the seventy-four acres as long as her deed of trust run; which he refused to do. This is the same seventy-four acres of land mentioned in the bill. Said he believes the endorsement on the title-bond "Perry paid nothing" was in the handwriting of Jacob Lorentz. Perry Lorentz at that time set up no claim to the land, except the deed of trust to his wife and children. Perry Lorentz and his wife accepted the benefit of the deed of trust, and used and occupied the said seventy-four acres for the term of ten years.

On cross-examination said he had an interest in the estate of Jacob Lorentz, deceased, and that if Perry held the seventy-four acres that interest would be diminished. No money was offered the wife of Perry Lorentz to induce her to release the seventy-four acres. About two or three weeks before Perry moved on the three hundred and thirty-four acres of land Jacob Lorentz got witness to go to Weston to see a man by the name of John Peterson, and try and prevail on him to let Perry remain in his (Peterson's) house, until he and Perry Lorentz could procure a house for Perry to move into, which Peterson

did, by witness and John Kee and Jacob Lorentz entering into a bond that Perry would leave the house in thirty days in as good condition as it then was. At the time said Jacob told witness that the seventy-four acres and the three hundred and thirty-four acres belonged to him; and that he had given Perry and his wife and children a deed of lease for the period of ten years; and that Perry had the privilege of paying for the seventy-four acres of land, but that he had not done it. He told witness that Perry had told him that he had gone to Pendleton to get some money from his wife's father to pay on the seventy-four acres of land, but he said Perry had not paid it.

Mifflin Lorentz said the Exhibits, "C" and "D" filed with the answer, being memoranda of the unsold land of said Jacob Lorentz, deceased, were in the handwriting of said Jacob Lorentz. He knew his handwriting well. That the memorandum "D" was made because some of the land mentioned in Exhibit "C" had been sold. The seventy-four acres in controversy is mentioned in the memoranda. The endorsement on the title-bond "Perry paid nothing" is in the handwriting of said Jacob Lorentz. Had a conversation with Perry about the seventy-four acres in 1868 or 1869. Perry said he wanted to make some arrangements about a house; that he wanted to know what he was to do, before the deed of lease to his wife expired. He stated that witness could sell the seventy-four acres, embraced in said deed of lease, to some parties in the neighborhood at a fair price, and proposed, if witness would sell to his wife the three hundred and thirty-four acres, also embraced in the deed of trust, at a fair price, he would get his wife to release her claim to the seventy-four acres, so witness could sell it at that time. Witness agreed to do so, and sold to Perry's wife the three hundred and thirty-four acres, at $11.00 per acre, (a much less price than it would bring) provided she would release her interest in the seventy-four acres, so witness could sell it at that time.

103

Witness delivered the writing to Perry for his wife's inspection and acceptance, which she declined to accept and sign the release of her interest under the deed of trust, unless witness, in addition to selling her the three hundred and thirty-four acres at $11.00 per acre, would pay her the interest on the money he might receive for the seventy-four acres during the time the deed of trust run, which witness refused to do. Perry Lorentz set up no claim to the land until about the time of bringing this suit. He seemed to regret that his wife would not consent to the arrangement he and witness had entered into.

On the 24th day of August, 1876, the circuit court of Braxton county on the final hearing of the cause dismissed the bill with costs. From which decree the plaintiff appealed.

*J. M. Bennett,* for appellant.

*G. D. Camden,* for appellees.

JOHNSON, JUDGE, delivered the opinion of the Court :

As the questions that are presented by the record are mostly of fact, I have thought it necessary to make a full statement of the facts in the cause.

It is clearly proved by the evidence that Jacob Lorentz sold the seventy-four acres of land in the bill described to David D. Whetzel, and bound himself in a writen contract to convey the said land to him by deed of general warranty, when the purchase-money was paid. That said Whetzel paid to the said Lorentz the whole of the said purchase-money, and was therefore entitled to a conveyance of the land.

It is just as clearly proved that said Whetzel sold said tract of land to the plaintiff, Perry Lorentz, in 1842, and put him in possession thereof, and assigned to him the said contract made with said Jacob Lorentz. Why then is not said Perry Lorentz entitled to a deed from the

heirs of Jacob Lorentz for said tract of land? Whetzel has received as he says himself, the entire purchase-money for the said land.

It is first insisted that Perry Lorentz is not entitled to the conveyance, because, as is claimed by the defendants, he did not pay for the land.

This court held, in *Lockhard & Ireland* v. *Beckley* et al., 10 W. Va., 74, that where a husband or father purchases land in the name of a wife or child, or in his own name, and in either case procures a conveyance to be made to the wife or child, there is no resulting trust to the husband or the father as in the case of a purchase by one and a conveyance to a stranger. Why is this? Because the presumption is, in such a case, that the husband or father intended to give the land to the wife or child. So it follows as a nesessary consequence, that when a father purchases a tract of land in the name of a son, and in the written contract the vendor is required upon the payment of the purchase-money to convey the land to the son, and the father pays the purchase-money, the son can in a court of equity compel the vendor to convey the land to him.

It can make no difference, that in this case the title was in the father, because his contract was to convey the property to either Whetzel or the assignee of said Whetzel. At least that is the legal effect of the contract. And even if the father had procured that assignment to have been made by Whetzel to his son Perry, and had paid all the purchase-money himself, as is claimed he did, to Whetzel, unless there was an abrogation of the contract, he would have been compelled in a court of equity to convey the property to his son. But the evidence of the old gentleman himself, corroborated by that of Whetzel, convinces me that it was not his money that paid for the seventy-four acres of land. He said to one witness, to whom he had said the land belonged to Perry, in answer to a question, " Why is this Perry's land?" " because Perry's wife paid her own money for it." He told an-

other witness that the land was Perry's, and said Perry had wanted him to make him a deed for it, and he refused to do it, on the ground that he intended to "keep it for Perry's wife and children for a wet day;" that "if Perry got it he would fool it away." A short time before his death Jacob Lorentz was anxious to know of his son Mifflin, whom he had made executor of his will, "if he had that matter fixed," and then raising himself up again in bed, he inquired of Mifflin "if he had all things fixed right," "if the papers were all fixed right," and Mifflin Lorentz said: "He appears to be troubled about Perry Lorentz's business—about the seventy-four acres of land;" and further said to those who were present, "I fixed that long ago," and that "Perry is all right." The deposition of George C. Lorentz, who details the above conversations, was taken long before the deposition of Mifflin Lorentz, who so stoutly defends in this cause. Mifflin does not even refer to the said conversation, and does not show how he "had fixed the matter." It is evident that he never did fix it; although his saying ne had may have soothed the anxiety of his dying father, who wanted justice done to his son Perry.

It is urged that the fact of the title-bond being in the possession of Jacob Lorentz, is a reason why the conveyance should not be decreed. There is nothing strange in the fact that the bond was in the possession of the father of the man who was entitled to it. Perry seems to have had a great deal of confidence in his father, as it was proper he should. It does not appear why his father took possession of it. It clearly appears that Perry did not surrender it to him. Whetzel said, after he had assigned it to Perry, he laid it down on the counter, and Perry went to take it, and his father took it. Why his father took it, Whetzel did not know. But the idea that Perry had surrendered it to him is clearly repudiated by the fact, that he afterwards asked his father for the conveyance, and the repeated declarations of his father that Perry was entitled to the land.

It is further urged, that Perry's silence as to his claim, and occupying the land under the deed of trust for the benefit of his wife and children, is a reason why the conveyance should not be decreed to be made. These facts constitute no good reason to deny the conveyance, unless they amount to an estoppel.

1879
Special Term.

Lorentz
v.
Lorentz, Ex'r,
et al.

Every estoppel, because it concludeth a man to allege the truth, must be certain to every intent, and not be taken by argument or inference. *Vanbiber* v. *Beirne et al.* 6 W. Va. 168. His silence, and occupying the land while the trust was in existence, cannot under the circumstances of this case amount to an estoppel. He might very well remain silent, while his wife and children under the benefit of the trust were not only enjoying the seventy-four acres, but three hundred and thirty acres more. The trustee, Jacob Lorentz, Jr., testifies, that after that trust was executed, his father, Jacob Lorentz, told him he must have the seventy-four acres transferred on the commissioner's books to Perry, because it was Perry's land, and he, Jacob, did not want to pay taxes on it twice. It does not appear for what reason it was included in the trust deed. Perry's silence under the circumstances, and his occupancy of the land with his wife and children during the existence of the trust-deed, did not injure the defendants in this cause, nor put them in a worse condition than they otherwise would have been.

Syllabus 2.

We think the plaintiff has shown himself entitled to a specific performance of the contract set out in the bill; and for the foregoing reasons the decree of the circuit court of Braxton county, rendered on the 24th day of August, 1876, dismissing the plaintiff's bill with costs, is reversed, at the costs of the appellees; and this cause is remanded to the circuit court of Braxton county, with instructions to that court to enter a decree in this cause, requiring, within such reasonable time as said court may appoint, the adult defendants, heirs-at-law of Jacob Lorentz, deceased, to execute to said plaintiff a deed for

said seventy-four acres of land, as required by the terms of said contract or title-bond filed in the papers of the cause, and appoint also a commissioner to execute said deed on behalf of the infant defendants, and provide also in said decree, if such adult defendants do not execute such conveyance in such reasonable time, then a commissioner, to be appointed by such decree, shall execute the same on their behalf; and such decree shall also give costs in the said circuit court to the plaintiff, and the cause shall be further proceeded in according to the rules governing courts of equity.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.    CAUSE REMANDED.